**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HEGIRA HEALTH, INC.,** | : | |
| | : | Case No. 2:25-cv-12481-SKD-CI |
| **Plaintiff,** | : | |
| | : | Judge Susan K. DeClercq |
| **v.** | : | |
| | : | Magistrate Judge Curtis Ivy, Jr. |
| **FIFTH THIRD BANK,** | : | |
| **NATIONAL ASSOCIATION,** | : | |
| | : | |
| **Defendant.** | : | |

Thomas P. Bruetsch
SCHENK & BRUETSCH PLC
211 W. Fort St., Ste. 1410
Detroit, MI 48226
(313) 774-1000, ext. 1001
Thomas.Bruetsch@SBDetroit.com

*Attorney for Plaintiff*

Victor A. Walton, Jr.
Jacob D. Mahle
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. Fourth St., Ste. 350
Cincinnati, OH 45202
Tel: (513) 723-4000
Fax: (513) 723-4056
vawalton@vorys.com
jdmahle@vorys.com

Todd A. Holleman
MILLER JOHNSON
500 Woodward Ave., Suite 3600
Tel: (313) 672-6939
hollemant@millerjohnson.com

*Attorneys for Defendant*

# DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Fifth Third Bank, National Association ("Fifth Third") moves to dismiss plaintiff Hegira Health, Inc.'s ("Plaintiff") sole claim against it under Federal Rule of Civil Procedure 12(b)(6). In support of its motion, Defendant relies on the on the accompanying brief.

Pursuant to E.D. Mich. L.R. 7.1, Defendant's counsel certifies that counsel communicated in writing with Plaintiff's counsel on September 2, 2025, explaining the nature of relief sought in this motion and seeking concurrence. Plaintiff's counsel did not concur.

WHEREFORE, Fifth Third respectfully requests that this Honorable Court grant its motion to dismiss Plaintiff's complaint with prejudice and grant other such relief as the Court deems appropriate under the circumstances.

Dated: September 3, 2025

*/s/ Victor A. Walton, Jr.*
Victor A. Walton, Jr.
Jacob D. Mahle
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. Fourth St., Ste. 350
Cincinnati, OH 45202
Tel: (513) 723-4000
Fax: (513) 723-4056
vawalton@vorys.com
jdmahle@vorys.com

Todd A. Holleman
MILLER JOHNSON
500 Woodward Ave., Suite 3600
Tel: (313) 672-6939
hollemant@millerjohnson.com

*Attorneys for Defendant Fifth Third Bank, National Association*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HEGIRA HEALTH, INC.,** | : | |
| | : | Case No. 2:25-cv-12481-SKD-CI |
| **Plaintiff,** | : | |
| | : | Judge Susan K. DeClercq |
| **v.** | : | |
| | : | Magistrate Judge Curtis Ivy, Jr. |
| **FIFTH THIRD BANK, NATIONAL ASSOCIATION,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

Thomas P. Bruetsch
SCHENK & BRUETSCH PLC
211 W. Fort St., Ste. 1410
Detroit, MI 48226
(313) 774-1000, ext. 1001
Thomas.Bruetsch@SBDetroit.com

*Attorney for Plaintiff*

Victor A. Walton, Jr.
Jacob D. Mahle
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. Fourth St., Ste. 350
Cincinnati, OH 45202
Tel: (513) 723-4000
Fax: (513) 723-4056
vawalton@vorys.com
jdmahle@vorys.com

Todd A. Holleman
MILLER JOHNSON
500 Woodward Ave., Suite 3600
Tel: (313) 672-6939
hollemant@millerjohnson.com

*Attorneys for Defendant*

**DEFENDANT'S BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

STATEMENT OF THE ISSUES ........ iv

MOST APPROPRIATE AUTHORITY ........ v

MEMORANDUM IN SUPPORT ........ 1

I. Preliminary Statement ........ 1

II. Factual Allegations ........ 2

A. The parties and relevant documents ........ 2

B. Plaintiff allowed a fraudster to wire funds from Plaintiff's account ........ 5

C. Plaintiff files suit alleging a single claim under Article 4A-202(b) of the UCC ........ 6

III. Law & Argument ........ 7

A. Legal Standard ........ 7

B. Plaintiff fails to state a claim under Article 4A of the UCC ........ 7

1. Plaintiff and Fifth Third agreed that authenticity of payment orders would be verified pursuant to security procedures ........ 9

2. Plaintiff agreed the security procedures are commercially reasonable ........ 10

3. Fifth Third accepted the payment orders in good faith and complied with the security procedures ........ 16

IV. Conclusion ........ 18

CERTIFICATE OF SERVICE ........ 19

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Armengau v. Cline*, 7 F. App'x 336 (6th Cir. 2001)....................2

*Ashcroft v. Iqbal*, 556 U.S. 662 129 S. Ct. 1937 (2009)....................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................7

*Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611 (8th Cir. 2014)....................9

*Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-cv-135 (S.D. Ohio Feb. 11, 2020).....15

*Hall v. Meisner*, 565 F. Supp. 3d 928 (E.D. Mich. 2021)....................2

*Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 740 F. Supp. 3d 1186 (M.D. Fla. 2024).................... passim

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008)....................7

*Skyline Int'l Dev. v. Citibank*, 706 N.E.2d 942 (Ill. Ct. App. 1998)....................11

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772 (E.D. Mich. 2015)....................2

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997)....................3

## **Statutes**

Ohio Rev. Code § 1304.56....................10

Ohio Rev. Code § 1304.57....................8

Ohio Rev. Code § 1304.57(B)....................8

Ohio Rev. Code § 1304.57(B)(1)(b)....................16

Ohio Rev. Code § 1304.57(C)(1)....................15

U.C.C. § 4A-201....................11

U.C.C. § 4A-202 .......... 7, 8, 14, 18

U.C.C. § 4A-202(b) .......... iv, 6

U.C.C. § 4A-203 .......... 11

U.C.C. Article 4A .......... 1, 6, 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 3, 7

## STATEMENT OF THE ISSUES

I. Whether Plaintiff's sole claim under Article 4A-202(b) of the UCC against its bank should be dismissed where the parties agreed to certain security procedures and Plaintiff fails to allege that the security procedures in place were not commercially reasonable, or that Fifth Third acted in bad faith or failed to act in accordance with the security procedures.

**MOST APPROPRIATE AUTHORITY**

1. Fed. R. Civ. P. 12(b)(6)
2. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
4. Ohio Rev. Code § 1304.57(B)
5. Ohio Rev. Code § 1304.56
6. *Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 740 F. Supp. 3d 1186 (M.D. Fla. 2024)
7. *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-cv-135, (S.D. Ohio Feb. 11, 2020)
8. *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611 (8th Cir. 2014)

# MEMORANDUM IN SUPPORT

## I. Preliminary Statement

Defendant Fifth Third Bank, National Association ("Fifth Third") recognizes the unfortunate reality that its customer, Hegira Health, Inc. ("Plaintiff") was defrauded by an unknown third-party and a significant amount of funds were diverted from its accounts. Notwithstanding this misfortune, Fifth Third does not bear responsibility for Plaintiff's losses.

Fifth Third is not an insurer—it is a bank. As Plaintiff concedes in its complaint, Fifth Third followed its commercially reasonable security procedures upon which the parties agreed. Plaintiff fell victim to a third party, and revealed its security credentials to a fraudster, who initiated the wires in question. Plaintiff knew by virtue of its agreement with Fifth Third that if it failed to maintain the confidentiality of the security procedures, its account information (and the assets therein) could be at risk.

And although the unfortunate circumstances giving rise to this case are the result of Plaintiff's conduct—not Fifth Third's—Plaintiff still contends that Fifth Third is liable under Article 4A of the UCC.

Plaintiff's allegations miss the mark for three clear reasons: (1) Plaintiff and Fifth Third agreed to certain security procedures; (2) the security procedures to which the parties agreed are commercially reasonable (and Plaintiff does not allege

otherwise); and (3) Fifth Third acted in good faith and did not contravene the parties' agreements (another point where Plaintiff does not offer any allegations to the contrary). Accordingly, Plaintiff's claim fails as a matter of law and should be dismissed with prejudice.

## II. Factual Allegations[1]

### A. The parties and relevant documents.

Plaintiff is "one of Michigan's largest freestanding, integrated behavioral health care organizations." Compl., PageID.14, ¶ 6. Fifth Third is a bank. *Id.*, ¶ 7. Plaintiff "maintained its bank accounts with [Fifth Third], and had access to an internet-based platform through which [Plaintiff] could manage its accounts." *Id.*, ¶ 9.

Although Plaintiff did not attach them to the complaint,[2] the parties' relationship is governed by certain agreements, including a Master Treasury

---

[1] For the purpose of this motion to dismiss only, Fifth Third takes Plaintiff's allegations as true.

[2] It is appropriate for the Court to consider these pertinent materials for the purpose of Fifth Third's motion to dismiss. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 781 (E.D. Mich. 2015) ("In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint ***or that are central to plaintiff's claims***…" (emphasis added); *Hall v. Meisner*, 565 F. Supp. 3d 928, 940 (E.D. Mich. 2021) ("Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, the defendant may introduce the pertinent exhibit, which is then considered part of the pleadings." (internal quotation omitted); *see also Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of

Management Agreement (the "MTMA," attached as **Exhibit A**), an Online Channel Access Agreement (the "OCAA," attached as **Exhibit B**), and Security Procedures for Commercial Wire Transfer & Automatic Clear House Services (the "Security Procedures," attached as **Exhibit C**). Among other things, these materials explain how Plaintiff could initiate wire transfers from its bank account through Fifth Third's online banking platform (known as Fifth Third Direct) and the security procedures in place for that platform. These security procedures included Plaintiff's administrator's "ID and password" in addition to "a passcode generated by an Access Device." *See* Ex. C, Security Procedures, § 2(B)(I); *see also* Ex. A, MTMA, § 26 (defining "security procedures" as the "[c]redentials, call-back protocols, and other systems, software and procedures provided by [Fifth Third], its [p]rocessors or any payment network for authenticating [i]nstructions, transactions and use of the [s]ervices"); *see also* Ex. B, OCAA, § 16 (defining security procedure similarly). In other words, Plaintiff agreed to security procedures that required the submission of a username, passcode, and rolling authentication or token code to even access their account with Fifth Third through the Fifth Third Direct portal.

---

Rule 12(b)(6)."); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.").

Moreover, Plaintiff agreed "that such Security Procedures selected by [Plaintiff] are commercially reasonable and suitable for [Plaintiff] with respect to [Plaintiff's] intended use of the applicable Services, including the size, type, and frequency of [Plaintiff's] Payment Orders." Ex. A, MTMA, § 8.1. Plaintiff further agreed:

> Any Instructions and Payment Orders communicated to Bank in Customer's name in compliance with the Security Procedures, and all access to and use of Services and Channel Services using the Security Procedures assigned to Customer, are considered authorized by Customer, whether or not authorized, and Customer shall be bound by the same in accordance with Applicable Law and the terms of this Agreement.

*Id.*, § 8.2. Plaintiff also agreed to "maintain the complete security and confidentiality of the Security Procedures" and "institute and use prudent internal security procedures and practices to control access to and use of the Security Procedures." *Id.*, § 8.7. Finally, ***Plaintiff agreed that its "failure to protect the confidentiality of the Security Procedures may enable unauthorized access to the Services and to Customer's Accounts and data***." *Id.* That is, Plaintiff expressly recognized and acknowledged that failing to protect its username, passcode, and rolling authentication code would potentially allow for the unauthorized access to its account. This is precisely what Plaintiff admits happened here.

**B. Plaintiff allowed a fraudster to wire funds from Plaintiff's account.**

"On May 13, 2025, a person identifying herself as a fraud prevention officer of [Fifth Third] was able to obtain login credentials to [Plaintiff's] accounts at Bank," which also "granted administrative rights over such accounts." Compl., PageID.15, ¶ 17. Although Plaintiff's allegation is a bit obtuse, ***Plaintiff admits that it provided its confidential security credentials to a fraudster*** (although Plaintiff did not know at the time it turned over this information that the person was a fraudster). *Id.*, ¶ 18. At some point within the following two days, the fraudster used the administrative control it obtained by acquiring Plaintiff's credentials "to allow a single user to wire instructions" although, "[p]reviously, dual authorization was required." *Id.*, PageID.16, ¶ 23. "On May 15, 2025, between 4:29 P.M. and 5:02 P.M., [Fifth Third] processed fourteen separate wire transfers from [Plaintiff's] accounts to bank accounts in Miami, Florida totaling $2,089,194.00" which were not "initiated or authorized by any Hegira personnel." *Id.*, PageID.15-16, ¶¶ 19-20.

According to Plaintiff's allegations, Fifth Third became aware of the situation and contacted Plaintiff approximately a half-hour after the wires were submitted. *See id.*, PageID.17, ¶ 31 ("When Bank finally notified Hegira after 5:00 P.M. on May 15, 2025, Hegira notified Bank that the fourteen wires were fraudulent and unauthorized.").

### C. Plaintiff files suit alleging a single claim under Article 4A-202(b) of the UCC.

Although Plaintiff acknowledges it surrendered its credentials to a fraudster, it filed the instant matter in state court on July 14, 2025, alleging Fifth Third violated UCC Article 4A. Compl., PageID.14. Plaintiff takes issue with Fifth Third's internal processes and procedures allowing the transaction on the system ***after*** the wires were submitted by the fraudster using Plaintiff's security procedures/credentials. *See, e.g.*, Compl., PageID.13, ¶ 1 ("This matter involves Fifth Third Bank's systemic control failures within its commercial payments infrastructure…"); *id.*, ¶ 3 ("From a payment systems standpoint, this volume, velocity, and concentration of anomalous transactions should have triggered real-time fraud scoring, session-based risk elevation, and interdiction mechanisms."); *id.*, ¶ 5 ("Fifth Third had a non-delegable obligation to not only make commercially reasonable controls available but to enforce them in good faith when the transaction pattern demanded intervention…"). Notably, Plaintiff's claim is not based on any allegation that the security procedures to which it agreed were ***not*** commercially reasonable or otherwise followed by the bank. *See generally* Compl.

On August 11, 2025, Fifth Third removed this matter on the basis of diversity of citizenship jurisdiction. Notice of Removal, PageID.1-6. Now, Fifth Third seeks dismissal of Plaintiff's claim, with prejudice, as Plaintiff has failed to state a claim for which relief may be granted.

## III. <u>Law & Argument</u>

### A. Legal Standard.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Nonetheless, the Plaintiff must provide "more than labels and conclusions," and if the complaint is not facially plausible, the court must grant the motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."); *see also Iqbal*, 556 U.S. at 678 (explaining a complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### B. Plaintiff fails to state a claim under Article 4A of the UCC.

Plaintiff asserts a single claim that Fifth Third violated UCC Article 4A and, specifically, Fifth Third "did not act in good faith, and did not act in compliance with reasonable security procedures, and is liable to [Plaintiff] for its losses under Article 4A, § 202 of the Uniform Commercial Code. Compl., PageID.18, ¶ 35.

Ohio[3] enacted Article 4A, § 202 of the UCC as R.C. § 1304.57, which states in pertinent part:

> (B)(1) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if both of the following apply:
>
> (a) The security procedure is a commercially reasonable method of providing security against unauthorized payments orders.
>
> (b) The bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

R.C. § 1304.57(B). "If a bank and its customer agree to implement a security procedure designed to protect themselves against fraud, then the customer will bear the risk of a fraudulent payment order if: (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the

3 The MTMA states "[t]his Agreement and any claims or disputes relating to or arising out of this Agreement or the Services shall be exclusively governed by, and construed in accordance with, the laws of the State of Ohio[.]" Ex. A, § 23; *see also* Compl., PageID.18, fn. 2 (citing Ohio Rev. Code § 1304.57).

customer." *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 617 (8th Cir. 2014).

The parties agreed to implement security procedures. Moreover, Plaintiff agreed that the implemented security procedures were commercially reasonable, ***and*** Plaintiff does not allege the security procedures were unreasonable. Instead, Plaintiff misses the point and focuses on Fifth Third's internal "fraud engine," which is not, a "security procedure" under either the UCC or the parties' contractual agreements. Last, Plaintiff does not allege that Fifth Third failed to act in accordance with the parties' agreed security procedures or otherwise in bad faith. Accordingly, Plaintiff's complaint should be dismissed in its entirety with prejudice.

**1. Plaintiff and Fifth Third agreed that authenticity of payment orders would be verified pursuant to security procedures.**

The MTMA states: "Customer will use the Services, Access Channels and Channel Services in accordance with the terms of the Agreement, ***including any Security Procedures offered by Bank in connection with the Services*** and as may be set forth in the applicable Implementation Materials. The Security Procedures verify the origin and authenticity of Instructions and communications sent to Bank, and are not designed to detect errors in any Instruction sent to Bank." Ex. A, MTMA, § 8.1 (emphasis added). The OCAA is even clearer: "Access to the Channel Services is subject to Security Procedures that Bank establishes with Customer" and "[a]ll

use of the Channel Services through the Security Procedures will be deemed to have been authorized by Customer." Ex. B, OCAA, § 4.1.

Accordingly, Plaintiff and Fifth Third agreed to implement security procedures. *See Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 740 F. Supp. 3d 1186, 1199 (M.D. Fla. 2024) ("Thus, the Court concludes that the parties agreed to security procedures as defined in Ohio Rev. Code § 1304.56.").

**2. Plaintiff agreed the security procedures are commercially reasonable.**

As an initial matter, it is important to define "security procedures." "'Security procedure' means a procedure established by agreement of a customer and a receiving bank for the purpose of verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or detecting error in the transmission or the content of the payment order or communication." R.C. § 1304.56. "A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices." *Id.*

Along the same lines, the MTMA defines "Security Procedures" as the "Credentials,[4] call-back protocols, and other systems, software and procedures

---

[4] In turn, "Credentials" are defined to include "the user name, personal identification numbers, identification codes, passwords, and other identifying and authentication inputs, security token or authentication device, equipment or software that the Customer uses to access the Services." Ex. A, MTMA, § 26. To be clear,

provided by Bank, its Processors or any payment network for authenticating Instructions, transactions and use of the Services." Ex. A, MTMA § 26; *see also* Ex. B, OCAA, § 16 (security procedures defined as "the Credentials, call back protocols, and other systems or procedures provided by Bank, its Processors or any payment network for authenticating Instructions, transactions and the use of a Channel Service."). Thus, the security procedures agreed upon by Plaintiff and Fifth Third relating to internet wire transfer instructions included "a unique, system-generated User ID and a confidential password" in addition to a passcode. Ex. C, Security Procedures, § 2(B)(I).

As a matter of law, security procedures ***do not*** include a bank's internal processes related to fraud detection that are the focus of Plaintiff's complaint. *See* UCC § 4A-201, cmt. ("[T]he term [security procedures] does not apply to procedures that the receiving bank may follow unilaterally in processing payment orders."); *see also Skyline Int'l Dev. v. Citibank*, 706 N.E.2d 942, 945 (Ill. Ct. App. 1998) (holding that an internal policy is not a security procedure). This focus on external procedures as opposed to internal mechanisms makes sense, because the commercial reasonableness standard is designed "to encourage banks to institute reasonable

---

these credentials are precisely the confidential information that Plaintiff admits it supplied to the fraudster.

safeguards against fraud but not to make them insurers against fraud." UCC § 4A-203, cmt.

Equipped with this understanding, the security procedures in this case were commercially reasonable for at least three separate reasons. ***First,*** Plaintiff **<u>agreed</u>** that Fifth Third's security procedures are commercially reasonable. *See* Ex. B, OCAA, § 15.4 ("Initial Customer and any Affiliate acknowledge and agree that the Security Procedures and Credentials provided by Bank to the Initial Customer shall be used to use the Services, ***and that such Security Procedures are commercially reasonable for the Instructions to be provided on behalf of each Affiliate***." (emphasis added)); *see also* Ex. A, MTMA § 8.1 ("Customer agrees that such Security Procedures selected by Customer are commercially reasonable and suitable for Customer with respect to Customer's intended use of the applicable Services, including the size, type, and frequency of Customer's Payment Orders."). Plaintiff's agreement, on its own, is sufficient for Fifth Third to make its showing. *See Harborview*, 740 F. Supp. 3d at1199 ("[E]ven if the security procedures consisted solely of the use of a username, password, and token code, Plaintiffs have admitted that such procedures are commercially reasonable.").

***Second,*** Plaintiff never alleges that Fifth Third's security procedures, i.e. Plaintiff's user ID, password, and passcode used to verify instructions, are not commercially reasonable, because none of Plaintiff's allegations involve security

procedures. Indeed, Plaintiff's entire complaint is focused on Fifth Third's internal processes or "fraud engine," as it calls them, which are ***not*** security procedures, as that term is used in Ohio law in accordance with the parties' agreements:

- "This matter involves Fifth Third Bank's systemic control failure within its commercial payments infrastructure …" Compl., PageID.13, ¶ 1.
- "Fifth Third had a non-delegable obligation to not only make commercially reasonable controls available but to enforce them in good faith when the transaction pattern demanded intervention." *Id.*, ¶ 5.
- "[B]anks are required to employ information security risk management practices that include automated, layered, real-time systems that risk score individual transactions and provide ***escalating internal*** controls to identify, mitigate and prevent fraud," Compl., PageID.15, ¶ 15 (emphasis added).
- "In risk scoring transactions, a bank's fraud engine takes into account numerous variables…" *Id*, ¶ 16.
- "At the time of the first wire, Bank's fraud engine should have flagged a number of anomalies." *Id.*, PageID.16, ¶ 22.
- "Based on these anomalies, Bank should have immediately issued a fraud alert and/or soft hold. In other words, Bank should have delayed processing the wire for review by its fraud team and contacted Hegira to verify the wire's authenticity. Absent verification, the wire should have been held and not paid." *Id.*, PageID.17, ¶ 25.
- "As these wires quickly progressed, Bank's fraud engine should have flagged additional anomalies…" *Id.*, ¶ 26.
- "No later than the fourth or fifth wire, and perhaps earlier, these patterns should have progressed from soft holds and fraud alerts to trigger a complete system block, requiring a manual override to process the wires." *Id.*, ¶ 27.
- "Alerts and holds should have been dispatched to a fraud analysis and escalated further to its fraud operations team, information securities group, and relationship manager for appropriate action." *Id.*, ¶ 28.

- "As the wires continued, the funds in Hegira's account were exhausted, yet another indicator of the fraud." *Id.*, ¶ 29.

Fifth Third and Plaintiff already note that these back-end measures cannot be relied upon by the Plaintiff, and are not meant to supplant the security procedures that Plaintiff jeopardized by providing them to an unknown fraudster:

> **6. FIFTH THIRD BANK APPLICATIONS**
> Fifth Third Bank may subject each initiated wire, and each ACH Entry submitted through *Fifth Third Direct*, to our proprietary electronic funds transfer analysis software applications. The analysis performed by this software evaluates a variety of factors relating to each transaction, which evaluation may trigger a halt or delay on a transfer that may lead to a follow-up call from an Authorized FTB Person to an Authorized Agent in order to take necessary action with respect to the matter that triggered the halt or delay. We will not release any affected wire transfer or ACH Entry until such time as we receive any necessary confirmation that we seek. ***Please note that our analysis and potential follow-up are not a substitute for the Security Procedures or proper account management by you, and may not be relied upon by you in any way.***

Ex. C, Security Procedures, § 6; *see also* Ex. A, MTMA § 8.2 ("Any Instructions and Payment Orders communicated to Bank in Customer's name in compliance with the Security Procedures assigned to Customer, are considered authorized by Customer, whether or not authorized, and Customer shall be bound by the same in accordance with Applicable Law and the terms of this Agreement."); *id.* § 8.6 ("Transaction Monitoring is part of Bank's internal processing and is not part of the Additional Programs or Security Procedures, and Customer agrees that the Security Procedures will be considered commercially reasonable regardless of whether they incorporate information from Transaction Monitoring or not.").

Plaintiff's laundry list of internal grievances misses the point—Plaintiff fails to allege that Fifth Third's (actual) security procedures were not commercially

reasonable and cannot state a claim under UCC § 4A-202 by pointing to additional measures it feels Fifth Third could have taken. *See Harborview*, 740 F. Supp. 3d at 1199 ("It would defy logic if further procedures, such as an algorithm-based test, when used ***in addition to*** procedures that the Court has found are commercially reasonable, would suddenly make such procedures commercially unreasonable.").

***Third***, although Plaintiff alleged it elected to use dual authorization with respect to wire transfers that the fraudster turned off, Compl., PageID.16, ¶ 23, the security procedures under which the wires were requested are still commercially reasonable as a matter of law. *See* R.C. § 1304.57(C)(1) ("Commercial reasonableness of a security procedure is a question of law…"). Indeed, courts commonly recognize that these security procedures are commercially reasonable in similar circumstances. *See Harborview*, 740 F. Supp. 3d at 1200 (recognizing the commercial reasonableness of security procedures including "the use of a username, password, and token code"); *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-cv-135, at *30 (S.D. Ohio Feb. 11, 2020) ("In addition to the security procedures agreed to, Benchmark offered Woda the use of a manual report system and banking tokens. Both parties agree that banking tokens are a commercial reasonable security measure."). Plaintiff's admitted provision of these security credentials to the fraudster, while unfortunate, does not render the procedures in question commercially unreasonable.

Accordingly, the security procedures at issue here were commercially reasonable as a matter of law.

### 3. Fifth Third accepted the payment orders in good faith and complied with the security procedures.

Under the third part of the test, Fifth Third must show it accepted the fraudulent payment orders in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. R.C. § 1304.57(B)(1)(b). Plaintiff does not allege Fifth Third violated any written agreement or instruction of the customer, and its bare assertion that Fifth Third failed to act in good faith is insufficient to state a claim. *See generally* Compl.

Moreover, Plaintiff does not allege that Fifth Third accepted the fraudulent payment orders in bad faith or that it failed to comply with the security procedures because, as discussed above, Plaintiff does not make any allegations whatsoever regarding the actual security procedures. *See supra* (III)(B)(2). Rather, Plaintiff lays out a list of items that it contends Fifth Third ***should*** have done ***internally*** to prevent fraud. *See e.g.*, Compl, PageID.13-18, ¶¶ 1, 5, 15, 16, 22, 25, 26, 27, 28, 29. The Court need not countenance this "Monday morning quarterbacking" masquerading as allegations that Fifth Third violated its policies and procedures. *See Harborview*, 740 F. Supp. 3d at 1202 ("Plaintiffs' protestations that they 'had the reasonable expectation that [Defendant] would inquire into every transaction with a requisite

Activity Score' is nothing more than Monday morning quarterbacking."). Indeed, Plaintiff only points to "after-the fact investigatory tool[s]" like "fraud engines" and "risk scoring," which simply are not relevant for determining if Fifth Third acted in accordance with its security procedures. *See id.* at 1203 (a bank's internal, after-the-fact risk scoring analyses and tools are not relevant to determining if a bank acted in accordance with agreed to security procedures).

In addition, like the plaintiff in *Harborview*, Plaintiff should recognize that "having read the MTMA … that [Fifth Third] was not specifically monitoring its instructions for specific names or IP addresses." 740 F. Supp. 3d at 1202; *see also* Ex. A, MTMA, § 8.1 (the security procedures are not "designed to detect any errors in Instructions sent to the Bank."). As Plaintiff alleges, Fifth Third is one of the "top twenty largest banks in the United States," Compl., PageID.14, ¶ 8, and it cannot reasonably expect Fifth Third to review every single transaction request it receives for fraud. Rather, Fifth Third trusted its customer to maintain the confidentiality of the security procedures upon which it relies.

In sum, Plaintiff's allegations reveal that Plaintiff turned over the security procedures to a fraudster, who turned off dual authentication, and then used the security procedures to submit seemingly valid wire instructions. If Plaintiff had not made these crucial mistakes and heeded the warning in the MTMA, Plaintiff would not have lost any funds. *See* Ex. A, MTMA, § 8.6 ("Customer's failure to protect the

confidentiality of the Security Procedures may enable unauthorized access to the Services and to Customer's Accounts and data.").

Accordingly, Plaintiff does not allege that Fifth Third acted in bad faith or otherwise failed to heed the parties' agreements because Fifth Third acted in good faith and in accordance with the security procedures.

## IV. Conclusion

Plaintiff has failed to state a claim for which relief may be granted. Accordingly, plaintiff Hegira Health, Inc.'s claim under Article 4A-202 should be dismissed with prejudice.

Dated: September 3, 2025

*<u>/s/ Victor A. Walton, Jr.</u>*
Victor A. Walton, Jr.
Jacob D. Mahle
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. Fourth St., Ste. 350
Cincinnati, OH 45202
Tel: (513) 723-4000
Fax: (513) 723-4056
vawalton@vorys.com
jdmahle@vorys.com

Todd A. Holleman
MILLER JOHNSON
500 Woodward Ave., Suite 3600
Tel: (313) 672-6939
hollemant@millerjohnson.com

*Attorneys for Defendant Fifth Third Bank, National Association*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 3rd day of September, 2025, he electronically filed the foregoing document with the Clerk of the Court using the Court's ECF filing system, which will send notice of filing to all counsel of record.

*/s/ Victor A. Walton, Jr.*
Victor A. Walton, Jr.